UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE HEINZ ENDOWMENTS, | : | No.: 24-838 |
| Plaintiff, | : | |
| v. | : | |
| CHARLES A. RICHARDSON, | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff The Heinz Endowments, by and through its undersigned counsel, files the following complaint in civil action.

### I.   JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over The Heinz Endowments' claims under 18 U.S.C. § 1030(g) and 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the facts that give rise to these claims occurred in this District. Additionally, The Heinz Endowments employed Richardson in this District, where Richardson also resides.

### II.   PARTIES

3. The Heinz Endowments is a non-profit foundation located in Allegheny County, Pennsylvania.

4. Charles A. Richardson is an adult who resides in Allegheny County, Pennsylvania.

### III.   FACTS

5. The Heinz Endowments hired Richardson in or about 2014.

6. Throughout his employment, Richardson was responsible for developing, implementing, and managing all technological aspects of The Heinz Endowments' operation.

7. This included developing and maintaining The Heinz Endowments' servers and IT systems.

8. The Heinz Endowments' IT systems were developed and maintained by Richardson.

9. Richardson last held the title of Senior Technology Advisor.

10. At all relevant times, The Heinz Endowments shared its servers and certain IT systems with the Heinz Family Office and/or the Heinz Family Foundation where, upon information and belief, Richardson served as a consultant.

11. In or about October 2023, Richardson began a leave of absence, which he remained on until the termination of his employment on or about January 5, 2024.

12. Richardson's administrative leave of absence was paid.

13. In or about December 2023, The Heinz Endowments began an investigation regarding the propriety of certain purchases made by Richardson using financial resources of The Heinz Endowments.

14. As part of this investigation, on or about December 19, 2023, at approximately 11:21 a.m.., The Heinz Endowments caused its third-party IT services provider to disable Richardson's administrative access rights to the system and to remove his access to his email. At this time, The Heinz Endowments caused its third-party IT services provider to make a digital copy of Richardson's email box on The Heinz Endowments' system.

15. On or about December 19, 2023, at approximately 12:42 p.m., The Heinz Endowments' President, Chris DeCardy, informed Richardson that it was performing an audit of certain computer-related expenses of The Heinz Endowments. At this time, DeCardy further advised Richardson that during the pendency of the audit, Richardson would not be allowed access

to the IT systems of The Heinz Endowments and that his access to The Heinz Endowments' systems would be suspended during the pendency of the audit.

16. After DeCardy's communication with Richardson on or about December 19, 2023, Richardson had no authorization to access The Heinz Endowments' servers and IT systems.

17. Despite these instructions, on or about December 19, 2023 at approximately 3:11 p.m., less than two hours after DeCardy's communication with him, Richardson improperly, surreptitiously and without authorization accessed The Heinz Endowments' servers and IT systems, upon information and belief, via a company-provided computer and/or via a device that was purchased using funds from The Heinz Endowments.

18. Richardson improperly, surreptitiously and without authorization remained in The Heinz Endowments' servers and IT system for approximately 12 hours, during which time he improperly accessed another user account for himself and assigned it global systems administrative privileges.

19. During this 12-hour period, Richardson also improperly, surreptitiously and without authorization accessed his email and deleted (or attempted to delete) thousands of emails and documents. Upon information and belief, Richardson's unauthorized access to The Heinz Endowments' network and servers was intended to impede and hinder The Heinz Endowments' investigation into the propriety of Richardson's use of its financial resources.

20. Among the more than 1,000 emails Richardson deleted or attempted to delete from the account were emails applicable to The Heinz Endowments' investigation of Richardson's purchases.

21. Between on or about December 19, 2023 and on or about December 21, 2023, Richardson accessed or attempted to access The Heinz Endowments' servers on several occasions.

None of these accesses or attempts to access were authorized by The Heinz Endowments or any other entity.

22. While accessing The Heinz Endowments' servers without authorization, Richardson also accessed and misappropriated files from The Heinz Endowments' IT infrastructure and then deleted these files, thereby depriving and attempting to deprive The Heinz Endowments of the ability to investigate fully the complete scope of Richardson's misdeeds.

23. On or about December 21, 2023, Richardson admitted, via text message to a Heinz Family Office employee, that he had accessed the servers for an allegedly innocent purpose, despite DeCardy's clear communication that he was not authorized to do so.

24. Richardson's nefarious actions while having unauthorized access to the servers, including his deletion of more than 1,000 emails directly related to the investigation being undertaken by The Heinz Endowments, refute Richardson's alleged innocent purpose for accessing the system.

25. Following these unauthorized intrusions, on January 5, 2024, Richardson's employment with The Heinz Endowments was terminated.

26. Upon information and belief, Richardson's consulting relationship with the Heinz Family Office and/or the Heinz Family Foundation was also terminated.

27. Following Richardson's termination, The Heinz Endowments continued its investigation and discovered additional acts of wrongdoing by Richardson.

28. The investigation revealed instances where Richardson had misused The Heinz Endowments' resources, including:

    a. From 2016-2023, Richardson embezzled significant funds of The Heinz Endowments to pay an IT-related company he owned and/or operated, called Operations

Unlimited, Inc. (or Ops Unlimited) for services that were either never performed or were actually performed by another third-party IT vendor. In furtherance of his scheme to defraud The Heinz Endowments, Richardson submitted invoices for work that was never performed by Ops Unlimited. During the course of its investigation, The Heinz Endowments discovered that as part of his effort to hide his embezzlement, in or about April 2021 Richardson submitted a report actually prepared by the third-party vendor. However, Richardson changed the report to create a new version that was intended to make it appear that it was actually authored by Ops Unlimited, the company owned and/or operated by Richardson. In total, Richardson embezzled at least approximately $960,000 of The Heinz Endowments' funds to himself through Ops Unlimited for IT services that were never provided. Between in or about December 2016 and in or about July 2023, The Heinz Endowments either mailed or wired through interstate commerce approximately $960,000 to Ops Unlimited, that was deposited in accounts of either Ops Unlimited or Operations Unlimited.

  b. As a further part of his scheme to defraud The Heinz Endowments of its property, in or about March 2018, Richardson sold certain computer servers, which upon information and belief were property of The Heinz Endowments, to a third-party purchaser and directed the purchaser to pay Operations Unlimited.

  c. In yet another part of his scheme to defraud The Heinz Endowments, on several occasions between 2022-2023, Richardson submitted expense reports for IT hardware and software he allegedly purchased using The Heinz Endowments assets that upon information and belief were never received by The Heinz Endowments. Upon

information and belief, Richardson's practice of submitting manipulated receipts to support expense reports was not limited to purchases made in 2022-2023 or from the Apple Store.

    d.  Despite being requested to do so on multiple occasions upon his termination of his employment, Richardson never returned the plethora of IT hardware and software purchased by him for The Heinz Endowments using assets of The Heinz Endowments. Additionally, some of the equipment that was returned by Richardson was returned in a manner that suggests that it was "wiped" of data or intentionally damaged.

  29.  On or about December 20, 2023, in an effort to cover up his scheme to defraud The Heinz Endowments, Richardson also misappropriated data by logging into The Heinz Endowments' IT system without authorization and exporting a copy of his Outlook file. Richardson attempted to delete and/or destroy the evidence of his scheme to defraud The Heinz Endowments on December 19, 20 and 21, 2023.

  30.  Even as late January 7, 2024, two days after he was terminated, Richardson continued to make unauthorized access into the IT system and computers of The Heinz Endowments by logging into The Heinz Endowments' IT system without authorization.

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

  31.  The allegations within the above paragraphs are incorporated herein by reference as if fully set forth herein.

  32.  The Heinz Endowments seeks relief pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

33. The Heinz Endowments' computer accessed by Defendant constitutes a "computer" within the meaning of 18 U.S.C. § 1030(e)(1) in that the computer constitutes a device for processing or storing data.

34. The Heinz Endowments computer accessed by Plaintiff constitutes a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2) in that it is used in or affecting interstate or foreign commerce.

35. Defendant violated 18 U.S.C. § 1030(a)(2) in that he intentionally accessed a protected computer on and after December 19, 2023, after his administrative access had been removed and without authorization from The Heinz Endowments, and thereby obtained, misappropriated and deleted and attempted to delete information from The Heinz Endowments' computer system, including but not limited to: emails relating to financial and purchasing information which were the subject of The Heinz Endowments' investigation and files and data from The Heinz Endowments' IT infrastructure.

36. Defendant violated 18 U.S.C. § 1030(a)(4) in that he knowingly and with the intent to defraud accessed a protected computer during his employment and after his termination without authorization from The Heinz Endowments, and in furtherance of the intended fraud obtained and misappropriated highly valuable information, including but not limited to: The Heinz Endowments' financial resources to pay his company Ops Unlimited for services it never performed and to submit expense reports for computer equipment allegedly purchased using The Heinz Endowments assets, but that upon information and belief, were not received by The Heinz Endowments.

37. Defendant is liable to The Heinz Endowments for damages under 18 U.S.C. § 1030(g).

38. The Heinz Endowments has suffered damage and loss by reason of these violations, including, without limitation, harm to The Heinz Endowments' data; costs of investigation and remediation, in an amount to be proved at trial, but in any event, well over $5,000 aggregated over a one-year period.

39. These losses include, but are not limited to, the expenses required to investigate and remediate Defendant's unauthorized access to its systems and related fraudulent activities.

40. Defendant's acts in accessing The Heinz Endowments' computer in excess of his authority and without authorization are willful, malicious, oppressive and in conscious disregard of The Heinz Endowments' rights, and The Heinz Endowments is therefore entitled to an award of punitive damages to punish his wrongful conduct and deter future wrongful conduct.

WHEREFORE, The Heinz Endowments respectfully requests that this Court enter judgment in its favor and against Defendant on this Count I, and (i) award The Heinz Endowments damages to be proven at trial, including punitive damages on the basis of Defendant's willful and malicious conduct; and (ii) such other relief as the Court deems just and proper.

**COUNT II**
**CONVERSION**

41. The allegations within the above paragraphs are incorporated herein by reference as if fully set forth herein.

42. By and through the acts described above, Defendant has converted The Heinz Endowments' property, specifically various IT hardware and software that Defendant allegedly purchased for The Heinz Endowments using funds belonging to The Heinz Endowments that were not returned following the termination of his employment or wiped of data or intentionally damaged.

43. Defendant has failed and refused to return this data and equipment, despite multiple demands.

44. Defendant has wrongfully maintained dominion and control over the IT hardware and software and has caused The Heinz Endowments to be deprived of its right to possess its products and data.

45. Defendant has no right to possess the IT hardware and software and has acted unreasonably in withholding them from the rightful owners of the products, The Heinz Endowments.

46. Moreover, by and through the acts described above, Defendant fraudulently embezzled from The Heinz Endowments to Ops Unlimited – Defendant's personal company – at least approximately $960,000 for IT services The Heinz Endowments never received or that it received from another IT vendor. By causing the funds to be sent by The Heinz Endowments to Ops Unlimited and, upon information and belief, enriching himself in the process, Defendant has wrongfully asserted dominion and control over The Heinz Endowments' funds in a manner inconsistent with The Heinz Endowments' ownership interest in such funds, and wrongfully and tortiously converted the funds to Defendant's own use.

47. Defendant has wrongfully refused to return the funds, despite an unequivocal legal obligation to do so and despite repeated demands from The Heinz Endowments.

48. Defendant's conduct was outrageous, malicious and in wholly wanton and reckless disregard for The Heinz Endowments' rights. Thus, punitive damages are warranted.

49. As a direct and proximate result of the materially false and fraudulent acts, misrepresentations and omissions described above, The Heinz Endowments has suffered and is entitled to substantial damages in excess of $960,000, the exact amount to be proven at trial.

50. The Heinz Endowments respectfully requests the Court order that the computer products and all funds paid to Ops Unlimited be returned to their rightful owner, The Heinz Endowments.

WHEREFORE, The Heinz Endowments respectfully requests that the Court enter judgment in its favor and against Defendant on this Count II, and (i) award The Heinz Endowments damages in an amount to be proven at trial, including punitive damages on the basis of Defendant's willful and malicious conduct; and (ii) such other relief as the Court deems just and proper.

## COUNT III
## FRAUDULENT MISREPRESENTATION

51. The allegations within the above paragraphs are incorporated herein by reference as if fully set forth herein.

52. As set forth herein, Defendant used his role with The Heinz Endowments developing and maintaining its servers and IT systems to make misrepresentations of material fact to The Heinz Endowments.

53. Specifically, Defendant misrepresented the nature of the business Ops Unlimited and his relationship with Ops Unlimited, which induced The Heinz Endowments to continue to "do business" with Ops Unlimited.

54. Indeed, on several occasions, Defendant claimed that Ops Unlimited was a subsidiary or affiliate of a legitimate vendor for The Heinz Endowments. In doing so, Defendant attempted to make it appear that Ops Unlimited was a legitimate company that provided actual services to The Heinz Endowments.

55. Moreover, Defendant misrepresented the alleged services for which The Heinz Endowments paid Ops Unlimited, which induced The Heinz Endowments to continue to pay Ops

Unlimited significant sums for the services it believed it was receiving, despite not receiving the services from Richardson's company.

56. In furtherance of his scheme to defraud, during the course of its investigation The Heinz Endowments has discovered that Defendant prepared a falsified report that he misrepresented was authored by Ops Unlimited, when in fact the report was prepared by a different third-party IT vendor.

57. Although Defendant has on several occasions denied any relationship with Ops Unlimited, significant evidence, including Defendant's own statements to third parties, establishes that Ops Unlimited is owned and/or operated by Defendant.

58. The third-party vendor who Defendant claimed to be the parent company or affiliate of Ops Unlimited has denied any association or affiliation with Ops Unlimited or Operations Unlimited.

59. Defendant also misrepresented expense reports he submitted to The Heinz Endowments for IT hardware and software he supposedly purchased for the benefit of The Heinz Endowments.

60. Defendant intended that The Heinz Endowments would rely on his misrepresentations to induce it to make substantial payments to Ops Unlimited, a company that he owned and/or operated, and to approve the sham expense reports for IT hardware and software it paid for but never received.

61. Through his material misrepresentations and omissions, Defendant plotted and planned to enrich himself and Ops Unlimited, the entity he owned and/or operated at the expense of The Heinz Endowments, by obtaining The Heinz Endowments' financial resources to pay Ops Unlimited for services it never performed and reimburse him for expense reports for IT hardware

and software The Heinz Endowments was charged for but upon information and belief it never received.

62. The Heinz Endowments relied on Richardson's material misrepresentations and omissions when it paid Ops Unlimited for services it never received and approved expense reports for devices for which it paid for but upon information and belief it never received.

63. The Heinz Endowments was justified in relying on Defendant's misrepresentations.

64. The acts of Defendant were offensive, outrageous, and knowing and intentional.

WHEREFORE, The Heinz Endowments respectfully requests that this Court enter judgment in favor its favor and against Defendant on this Count III, and (i) award The Heinz Endowments damages to be proven at trial, including punitive damages on the basis of Defendant's willful and malicious conduct; and (ii) such other relief as the Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT

65. The allegations within the above paragraphs are incorporated herein by reference as if fully set forth herein.

66. As set forth herein, Defendant has exercised dominion and control over the IT hardware and software purchased for the benefit of The Heinz Endowments, its proprietary data in the form of the Outlook file Defendant exported without authorization, and the funds it paid to Ops Unlimited solely due to Defendant's misrepresentations and omissions of material facts regarding the nature of such purchases.

67. Moreover, upon information and belief, Defendant has derived significant revenue and profits from The Heinz Endowments solely due to his misrepresentations and omissions of material facts relating to the services Ops Unlimited was supposedly providing to The Heinz

Endowments which induced The Heinz Endowments to approve payments to Ops Unlimited, a company he owns and/or operates.

68. Defendant has thus unjustly profited from his embezzlement of The Heinz Endowments' financial resources, proprietary data, and IT hardware and software.

69. Defendant has usurped The Heinz Endowment' financial resources, proprietary data and tangible property without The Heinz Endowments' authorization or consent, and without any compensation to The Heinz Endowments.

70. Defendant's theft and retention of the IT equipment, proprietary data, and approximately $960,000 in funds paid to Ops Unlimited occurred under such circumstances that it would be inequitable for Defendant to retain those benefits, and Defendant has been unjustly enriched in an amount in excess of $960,000.

71. Defendant has acted secretly, surreptitiously, and contrary to law in an attempt to deprive The Heinz Endowments of its rights, title and interest.

72. Defendant's conduct was knowing, intentional, wanton and in reckless disregard of the law and The Heinz Endowments' rights.

WHEREFORE, The Heinz Endowments respectfully requests that this Court enter judgment in its favor and against Defendant on this Count IV, and (i) award The Heinz Endowments damages to be proven at trial; (ii) award The Heinz Endowments the Defendant's interests and proceeds derived from his misuse of The Heinz Endowments' financial resources; (iii) the return of the Apple products belonging to The Heinz Endowments; (iv) the return of the proprietary data that Defendant misappropriated; and (v) such other relief as the Court deems just and proper.

## COUNT V
## BREACH OF FIDUCIARY DUTY

73. The allegations within the above paragraphs are incorporated herein by reference as if fully set forth herein.

74. An employee has a fiduciary duty of loyalty to provide services to his employer in accordance with the terms and conditions of that engagement. *See B.G. Balmer & Co. v. Frank Crystal & Co.*, 2016 Pa. Super. LEXIS 516 (Pa. Super. Ct. Sept. 9, 2016); *Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. 2003).

75. Further, an employee has a duty to "act with the utmost good faith in furtherance and advancement of the interests of his" employer. *Sylvester v. Beck*, 178 A.2d 755, 757 (Pa. 1962).

76. An employee's duty of loyalty includes "act[ing] solely for the benefit of the [employer] in all matters connected with his [employment]." Restatement (Second) of Agency, § 387.

77. Richardson owed a duty of loyalty to The Heinz Endowments based on his employment.

78. Richardson breached his duty of loyalty owed to The Heinz Endowments when Richardson failed to disclose his relationship with Ops Unlimited and made material misrepresentations and omissions regarding the services Ops Unlimited supposedly provided to The Heinz Endowments, thereby inducing The Heinz Endowments to approve payments to Ops Unlimited for services it never received from his company.

79. As a direct result of Richardson's intentional and egregious breaches of his obligations to his employer, The Heinz Endowments has been damaged and will continue to be damaged.

WHEREFORE, The Heinz Endowments respectfully requests that this Court enter judgment in its favor and against Defendant on this Count V, and (i) award The Heinz Endowments damages to be proven at trial; and (ii) such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

DATED this the 10th day of June, 2024.

> */s/ Mariah H. McGrogan*
> Mariah H. McGrogan (SBN 318488)
> Brianna L. Schmid (SBN 331858)
> REED SMITH LLP
> Reed Smith Centre
> 225 Fifth Avenue
> Pittsburgh, PA  15222-2716
> Telephone: +1 412 288 3131
> Facsimile: +1 412 288 3063
>
> *Counsel for Plaintiff*